*Caption in Compliance with D.N.J. LBR 9004-1(b)*

**JACOBS P.C.**
Adam Sherman, Esq.
Aaron Slavutin, Esq. (*pro hac vice* forthcoming)
717 Fifth Avenue, 17th Floor
New York, New York 10022
(212) 229-0476
adam@jacobspc.com
aaron@jacobspc.com

*Attorneys for Plaintiff OrcaFunding LLC*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>**DAVID ARTHUR SHABSELS,**<br><br>Debtor. | Chapter 11<br><br>Case No. 26-16530 (CMG) |
| **ORCAFUNDING LLC,**<br><br>Plaintiff,<br><br>v.<br><br>**DAVID ARTHUR SHABSELS,**<br><br>Defendant. | Adv. Pro. No. 26-________ (CMG) |

## COMPLAINT

Plaintiff OrcaFunding LLC ("OrcaFunding" or "Plaintiff"), by its attorneys, Jacobs P.C., as and for its complaint against defendant David Arthur Shabsels, alleges as follows:

## BACKGROUND AND JURISDICTION

1. The Debtor, David Arthur Shabsels (the "Debtor"), filed his voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") on June 4, 2026 (the "Petition Date").

2. OrcaFunding is a creditor of the Debtor.

3. No creditors' committee or trustee has been appointed in the Debtor's case.

4. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and the Standing Order of Reference of the United States District Court for the District of New Jersey dated September 18, 2012.

5. This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

6. Pursuant to Fed. R. Bankr. P. 7008, OrcaFunding consents to the entry of final orders and judgment by this Court.

7. Venue of this adversary proceeding in this district is proper pursuant to 28 U.S.C. § 1409(a).

8. This adversary proceeding is brought pursuant to 11 U.S.C. § 523(a)(2) and (a)(6) and Fed. R. Bankr. P. 4007 and 7001(6), and is timely under Fed. R. Bankr. P. 4007(c).

**FACTS UNDERLYING ALL CLAIMS FOR RELIEF**

9. In the spring of 2026, Michael Aaron Shabsels ("Michael Shabsels"), the Debtor's brother, contacted OrcaFunding concerning financing for entities with which the Debtor and Michael Shabsels were involved (collectively, the "Entities").

10. Upon information and belief, the Debtor and Michael Shabsels together owned, controlled and operated the Entities as a common enterprise, and Michael Shabsels acted as the Debtor's partner and agent in dealing with OrcaFunding.

11. Before entering into each of the Agreements, OrcaFunding reviewed bank statements and other financial and business information furnished by or at the direction of Michael Shabsels, and used that information to estimate the Entities' average revenue and to set

the Specified Percentage and the Periodic Amount (each as defined in the Agreements) under each Agreement.

**<u>The April 2026 Agreement</u>**

12. On or about April 17, 2026, OrcaFunding and the Entities entered into a Sale of Future Receipts Agreement (the "April Agreement").

13. A copy of the April Agreement, together with the Addendum to Merchant Cash Advance Agreement executed in connection with it (the "April Addendum"), is annexed hereto as Exhibit A and incorporated herein by reference. References herein to the April Agreement include the April Addendum.

14. The Entities named as parties to the April Agreement are Pine Forest Campco LLC, 11200 West Florissant Avenue Realty LLC, and each of the entities listed on Exhibit A to the April Agreement.

15. Michael Shabsels signed the April Agreement on behalf of, and purporting to bind, each of the Entities.

16. The transaction contemplated by the April Agreement was OrcaFunding's purchase of a specified amount of the Entities' Future Receipts, consisting of all payments received by each of the Entities, or their rights to receive such payments, in the ordinary course of the Entities' business, including but not limited to (a) payments made by cash, check, Automated Clearing House ("ACH") or other electronic transfer; (b) payments, or rights to payments, made by credit card, debit card, bank card or charge card ("Payment Card"); (c) accounts and payment intangibles; and (d) payments made in any other form (the "Future Receipts").

17. Under the April Agreement, OrcaFunding purchased $1,400,000 of Future Receipts (the “Purchased Amount,” as defined in the April Agreement) for a purchase price of $1,000,000.

18. The April Agreement required the Entities to deliver the entire Purchased Amount to OrcaFunding over time by permitting OrcaFunding to debit the Periodic Amount (as defined in the April Agreement, and subject to adjustment) on each Remittance Day (as defined in the April Agreement) from one or more deposit accounts designated by the Entities for that purpose (each, an “Authorized Account”).

19. The Entities’ obligations under the April Agreement were guaranteed by the Debtor and his brother, Michael Shabsels. (See Exhibit A.)

20. The Debtor signed the April Agreement as Guarantor.

21. Michael Shabsels instructed OrcaFunding to pay the $1,000,000 purchase price to Quadstar Realty LLC (“Quadstar”), one of the Entities.

22. OrcaFunding paid the $980,000 to Quadstar; there was a $20,000 origination fee.

**<u>The May 2026 Agreement</u>**

23. On or about May 21, 2026, OrcaFunding and the Entities entered into a Sale of Future Receipts Agreement (the “May Agreement”).

24. A copy of the May Agreement, together with the Addendum to Merchant Cash Advance Agreement executed in connection with it (the “May Addendum” and, together with the April Addendum, the “Addenda”), is annexed hereto as Exhibit B and incorporated herein by reference. References herein to the May Agreement include the May Addendum. The April Agreement and the May Agreement, each including its Addendum, are referred to collectively as the “Agreements.”

25. The Entities named as parties to the May Agreement are Pine Forest Campco LLC, 11200 West Florissant Avenue Realty LLC, and each of the entities listed on Exhibit A to the May Agreement.

26. Michael Shabsels signed the May Agreement on behalf of, and purporting to bind, each of the Entities.

27. The transaction contemplated by the May Agreement was OrcaFunding's purchase of the Entities' Future Receipts, on the same terms described above with respect to the April Agreement.

28. Under the May Agreement, OrcaFunding purchased $4,000,000 of Future Receipts (the "Purchased Amount," as defined in the May Agreement) for a purchase price of $2,000,000.

29. The May Agreement required the Entities to deliver the entire Purchased Amount to OrcaFunding over time by permitting OrcaFunding to debit the Periodic Amount (as defined in the May Agreement, and subject to adjustment) on each Remittance Day (as defined in the May Agreement) from one or more Authorized Accounts.

30. The Entities' obligations under the May Agreement were guaranteed by the Debtor and his brother, Michael Shabsels. (See Exhibit B.)

31. The Debtor signed the May Agreement as Guarantor.

32. Michael Shabsels instructed OrcaFunding to pay the $2,000,000 purchase price to Quadstar.

33. OrcaFunding paid $1,960,000 to Quadstar; there was a $40,000 origination fee.

**<u>The Debtor's Misrepresentations to OrcaFunding</u>**

34. Paragraph 13(e) of each of the Agreements provides:

> Representations, Warranties and Covenants of Seller. As of the date of this Agreement and, unless expressly stated otherwise, continuing until Buyer has received the Purchased Amount and all fees and charges due under this Agreement, Seller represents, warrants and covenants to Buyer . . .
>
> e. Authority to Enter Into This Agreement. Seller and the person(s) signing this Agreement on behalf of Seller, have full power and authority to incur and perform the obligations under this Agreement, all of which have been duly authorized.
>
> (the "Authority Representation").

35. The Entities named as parties to the Agreements include, among others, (a) Mega Funworks Inc., (b) Tee Bar Corp., (c) Vytalize Health, LLC, (d) Willow Lake Day Camps LLC and (e) Willow Lake Land Corporation.

36. Mega Funworks Inc. has advised OrcaFunding that it did not authorize Michael Shabsels to sign the Agreements on its behalf.

37. Tee Bar Corp. has advised OrcaFunding that it did not authorize Michael Shabsels to sign the Agreements on its behalf.

38. Vytalize Health, LLC has advised OrcaFunding that it did not authorize Michael Shabsels to sign the Agreements on its behalf.

39. Willow Lake Day Camps LLC has advised OrcaFunding that it did not authorize Michael Shabsels to sign the Agreements on its behalf.

40. Willow Lake Land Corporation has advised OrcaFunding that it did not authorize Michael Shabsels to sign the Agreements on its behalf.

41. Upon information and belief, other Entities likewise did not authorize Michael Shabsels to sign the Agreements on their behalf.

42. Paragraph 13(g) of each of the Agreements provides:

> Representations, Warranties and Covenants of Seller. As of the date of this Agreement and, unless expressly stated otherwise, continuing until Buyer has received the Purchased Amount and all fees and charges due under this Agreement, Seller represents, warrants and covenants to Buyer . . .
>
> g. No Pending or Contemplated Bankruptcy as of the Date of this Agreement. As of the date of this Agreement: (a) Seller has not filed, and does not plan to file, any petition for bankruptcy protection under Title 11 of the United States Code, (b) there has been no involuntary petition brought or pending against Seller, and (c) Seller has not received any communication from any third party indicating that an involuntary petition will be filed against Seller. Seller has not consulted with a bankruptcy attorney or a debt relief organization within six months prior to the date of this Agreement. Seller further warrants that, as of the date of this Agreement, it does not plan to engage the services of a debt relief organization.

(the “Bankruptcy Representation”).

43. The Debtor’s guaranty of each of the Agreements provides:

> Agreement of Guarantor: By signing below each Guarantor agrees to the terms and conditions contained in this Agreement, and further agrees that this transaction is for business purposes.

44. By the guaranty’s terms, the Debtor subscribed to and made the Bankruptcy Representation.

45. By the guaranty’s terms, the Debtor subscribed to and made the Authority Representation. (The Bankruptcy Representation and the Authority Representation, as made in each of the Agreements, are referred to collectively as the “Representations.”)

46. SIMAD Holdings Ltd. (“SIMAD Holdings”) is one of the Entities.

47. On June 4, 2026, SIMAD Holdings and certain other Entities filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in this Court. In re SIMAD Holdings Ltd., et al., Lead Case No. 26-16388 (CMG) (collectively, the “SIMAD Cases”).

48. The Debtor filed his own petition on the same day.

49. Michael Shabsels also filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on June 4, 2026. In re Michael Aaron Shabsels, Case No. 26-16529 (CMG).

50. Upon information and belief, the Debtor, Michael Shabsels and the Entities were each insolvent at all relevant times.

51. The declaration of Assad Ravid, the Chief Restructuring Officer in the SIMAD Cases, states that the Entities owed approximately $211.6 million on certain Israeli certificates of indebtedness, which were secured by collateral, and that the Entities defaulted on the first interest payment due thereunder on May 31, 2026. Dkt No. 7-1 in Case No. 26–16388–CMG.

52. Thus, the Entities defaulted on more than $211 million of debt on May 31, 2026.

53. The retainer letter of Cole Schotz P.C., general bankruptcy counsel to the debtors in the SIMAD Cases, is dated May 28, 2026.

54. May 28, 2026 is one week after the May Agreement and forty-one days after the April Agreement.

55. Upon information and belief, the Debtor, Michael Shabsels and the Entities consulted with a bankruptcy attorney or a debt relief organization within the six months prior to the date of the April Agreement.

56. Upon information and belief, as of the date of the April Agreement, the Debtor, Michael Shabsels and the Entities planned to file for bankruptcy protection or to engage the services of a debt relief organization.

57. Upon information and belief, the Debtor, Michael Shabsels and the Entities consulted with a bankruptcy attorney or a debt relief organization within the six months prior to the date of the May Agreement.

58. Upon information and belief, as of the date of the May Agreement, the Debtor, Michael Shabsels and the Entities planned to file for bankruptcy protection or to engage the services of a debt relief organization.

59. Under the Agreements, OrcaFunding assumed the risk that the Entities' businesses, as the Debtor and Michael Shabsels represented them, would slow or fail. OrcaFunding did not assume the risk of dealing with a counterparty that had already consulted bankruptcy counsel and planned to file, or with a signatory who lacked authority to bind the entities whose Future Receipts were purportedly sold. Those are facts peculiarly within the knowledge of the Debtor and Michael Shabsels, not ascertainable from a review of the Entities' financial information, and OrcaFunding required the Representations for that reason.

60. The Authority Representations were false.

61. The Authority Representations were materially false.

62. Upon information and belief, the Debtor knew that the Authority Representations were false when he made them to OrcaFunding.

63. Upon information and belief, the Debtor knew that the Authority Representations were materially false when he made them to OrcaFunding.

64. Upon information and belief, the Debtor intended that OrcaFunding rely on the Authority Representations.

65. Upon information and belief, OrcaFunding reasonably relied on the Authority Representations.

66. Upon information and belief, OrcaFunding reasonably relied on the Authority Representations by entering into and performing under the Agreements.

67. Upon information and belief, OrcaFunding justifiably relied on the Authority Representations by entering into and performing under the Agreements.

68. The Bankruptcy Representations were false.

69. The Bankruptcy Representations were materially false.

70. Upon information and belief, the Debtor knew that the Bankruptcy Representations were false when he made them to OrcaFunding.

71. Upon information and belief, the Debtor knew that the Bankruptcy Representations were materially false when he made them to OrcaFunding.

72. Upon information and belief, the Debtor intended that OrcaFunding rely on the Bankruptcy Representations when he made them.

73. OrcaFunding relied on the Authority Representations and the Bankruptcy Representations. In reliance on them, OrcaFunding entered into the April Agreement and wired $980,000 on April 17, 2026, and entered into the May Agreement and wired $1,960,000 on May 22, 2026.

74. OrcaFunding's reliance on the Representations was reasonable and justifiable.

75. The Debtor's guaranty is a guaranty of the Entities' performance of their representations, warranties and covenants under the Agreements, including the Representations.

76. The Authority Representation is a covenant of the Entities under Section 13 of the Agreements, and the Debtor guaranteed its performance under Section 18. The Entities, acting through Michael Shabsels, breached Section 13(e) of the Agreements by making the Authority Representation, which was false when made, and the Debtor breached his guaranty of that covenant. Those breaches constitute an Addendum Default under Section 5.1(b) of each of the Addenda.

77. Upon that Addendum Default, the undelivered Purchased Amount under each Agreement became immediately due under Section 15 of the Agreements, and the Debtor became liable under Section 18 of the Agreements for the damages resulting from the breach of the covenants he guaranteed.

78. The false Representations are the proximate cause of OrcaFunding's injuries.

79. As a result of the foregoing, the Debtor is indebted to OrcaFunding under his guaranty in an amount not less than $2,552,500, being the $2,940,000 that OrcaFunding paid under the Agreements in reliance on the Representations, less the $387,500 in remittances OrcaFunding received, together with attorneys' fees, costs and expenses to the extent provided in the Agreements and the guaranty (the "Claim"). In the alternative, the Claim is the undelivered Purchased Amounts — $1,400,000 under the April Agreement and $4,000,000 under the May Agreement, or $5,400,000 in the aggregate — less the $387,500 in remittances received.

**FIRST CLAIM FOR RELIEF**

**(Nondischargeability of Debt – 11 U.S.C. § 523(a)(2)(A))**

80. OrcaFunding repeats and realleges each of the foregoing allegations as if fully set forth herein.

81. The Debtor made the false Representations to OrcaFunding.

82. The Debtor made the false Representations with intent to deceive OrcaFunding.

83. The Debtor knew the Representations were false when they were made.

84. The Debtor made the false Representations with the intent and purpose of deceiving OrcaFunding into entering into and performing under the Agreements.

85. The Debtor made the false Representations with the intent and purpose of deceiving OrcaFunding into transferring money to the Entities.

86. The Debtor made the false Representations with the intent and purpose of deceiving OrcaFunding into providing money to the Entities, which, upon information and belief, the Debtor controlled and from which he benefited.

87. OrcaFunding justifiably relied on the Debtor's false Representations by entering into and performing under the Agreements.

88. OrcaFunding sustained damages as a proximate result of the Debtor's false Representations.

89. In the alternative, and upon information and belief, Michael Shabsels made the false Representations to OrcaFunding as the Debtor's partner and agent in the common enterprise through which the Debtor and Michael Shabsels operated the Entities, and the Debtor knowingly participated in, and benefited from, the scheme by which the purchase prices were obtained from OrcaFunding. The Debtor is liable for that fraud under applicable non-bankruptcy law, and the resulting debt is excepted from discharge whether or not the Debtor personally made the false Representations.

90. The Claim is a debt for money and property obtained by false pretenses, a false representation, or actual fraud, whether committed by the Debtor directly or by Michael Shabsels as the Debtor's partner and agent, and is excepted from the Debtor's discharge pursuant to 11 U.S.C. § 523(a)(2)(A).

## SECOND CLAIM FOR RELIEF

### (Nondischargeability of Debt – 11 U.S.C. § 523(a)(6))

91. OrcaFunding repeats and realleges each of the foregoing allegations as if fully set forth herein.

92. The Debtor's making of the false Representations to OrcaFunding was willful.

93. Upon information and belief, the Debtor knew that injury to OrcaFunding was certain, or substantially certain, to result from his false Representations.

94. Upon information and belief, the Debtor intended to cause the injury to OrcaFunding that resulted from the false Representations.

95. The Debtor's making of the false Representations to OrcaFunding was malicious, in that it was wrongful, without just cause or excuse, and done with knowledge that it would injure OrcaFunding.

96. Upon information and belief, the breaches of the Agreements and the Debtor's guaranty were accompanied by the aggravating circumstance of the Debtor's false Representations to OrcaFunding, and OrcaFunding's injury was therefore willful and malicious.

97. The Claim is a debt for willful and malicious injury by the Debtor to OrcaFunding and its property, and is excepted from the Debtor's discharge pursuant to 11 U.S.C. § 523(a)(6).

**THIRD CLAIM FOR RELIEF**

**(Nondischargeability of Debt – 11 U.S.C. § 523(a)(2)(B), Pleaded in the Alternative)**

98. OrcaFunding repeats and realleges each of the foregoing allegations as if fully set forth herein.

99. The Bankruptcy Representation was made in writing, in each of the Agreements and in the Debtor's written guaranty of each of the Agreements.

100. To the extent the Bankruptcy Representation is a statement respecting the financial condition of the Debtor or of an insider of the Debtor, it was a materially false written statement respecting the financial condition of the Debtor, of Michael Shabsels, and of the Entities, each of whom, upon information and belief, is an insider of the Debtor within the meaning of 11 U.S.C. § 101(31).

101. OrcaFunding reasonably relied on the written Bankruptcy Representation by entering into and performing under the Agreements.

102. The Debtor made the written Bankruptcy Representation with intent to deceive OrcaFunding.

103. The Claim is therefore excepted from the Debtor's discharge pursuant to 11 U.S.C. § 523(a)(2)(B).

WHEREFORE, OrcaFunding respectfully requests that the Court enter judgment against the Debtor (1) determining that the Claim is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A), (a)(2)(B) and (a)(6); (2) liquidating the Claim and awarding OrcaFunding judgment thereon in an amount to be determined at trial, together with attorneys' fees and costs to the extent provided in the Agreements and the Debtor's guaranty; and (3) granting OrcaFunding such other and further relief as the Court deems just and proper.

Dated: New York, New York
September 15, 2026

**JACOBS P.C.**
*Attorneys for Plaintiff OrcaFunding LLC*

By: *<u>/s/ Adam Sherman</u>*
Adam Sherman, Esq.
Aaron Slavutin, Esq. (*pro hac vice* forthcoming)
717 Fifth Avenue, 17th Floor
New York, New York 10022
(212) 229-0476
adam@jacobspc.com
aaron@jacobspc.com